IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA /
INTERNAL REVENUE SERVICE,

    *Appellant*,

    v.

SUSQUEHANNA BANK,

    *Appellee*.

_____

*In re* RESTIVO AUTO BODY, INC.,

    *Debtor*.

Civil Action No. ELH-12-3597

*Adversary No. 11-734 & Bankruptcy Case No. 11-18718 (Chap. 11) in the United States Bankruptcy Court for the District of Maryland*

**MEMORANDUM OPINION**

The United States of America/Internal Revenue Service ("IRS"), appellant, appeals the grant of summary judgment by the United States Bankruptcy Court for the District of Maryland in favor of Susquehanna Bank ("Susquehanna"), appellee.[1] The IRS and Susquehanna dispute which party has priority over the proceeds from the sale of certain real property owned by Restivo Auto Body, Inc. ("Restivo"), the debtor in an underlying Chapter 11 bankruptcy proceeding.

In January 2005, Restivo borrowed approximately $1 million from Susquehanna and, as security for the loan, executed and delivered to Susquehanna an indemnity deed of trust in two parcels of real property owned by Restivo in Eldersburg, Maryland, one of which was improved and the other of which was unimproved. After Restivo delivered the deed of trust to

_____

[1] This Court has appellate jurisdiction over the Bankruptcy Court's judgment pursuant to 28 U.S.C. § 158(a).

Susquehanna, but before Susquehanna recorded the deed in the Land Records of Carroll County, the IRS filed a Notice of Federal Tax Lien against all property and rights to property owned by Restivo, due to unpaid employment taxes.

In Restivo's subsequent bankruptcy proceeding, the Bankruptcy Court issued an order authorizing the sale of the unimproved property (hereafter, the "Property"), and Susquehanna initiated an adversary proceeding to determine the priority of its interest in the Property vis-à-vis the priority of the IRS's interest. Susquehanna and the IRS filed cross-motions for summary judgment, and the Bankruptcy Court ruled in favor of Susquehanna. The IRS noted this appeal, which has been fully briefed.[2] For the reasons that follow, I will affirm the judgment of the Bankruptcy Court.

**Background**

Restivo owned two pieces of real property: Lot 17 and Lot 39, Enterprise Street, Eldersburg, Maryland. *See* ECF 1-15 and ECF 1-16 (purchase deeds). Lot 39, which was unimproved, is the Property at issue here. On January 4, 2005, Susquehanna disbursed to Restivo a loan in the amount of $1,006,065.72. *See* ECF 1-25 (affidavit of Susquehanna Bank vice president). On the same day, Restivo executed and delivered to Susquehanna an indemnity deed of trust ("IDOT") to the two properties, securing its promise to repay the loan. *See* ECF 1-17 (IDOT).

Days later, on January 10, 2005, the IRS filed in the Circuit Court for Carroll County a Notice of Federal Tax Lien against Restivo in the amount of $147,392.84. *See* ECF 1-18 at 7

---

[2] I have considered the IRS's appellant's brief (ECF 6), Susquehanna's appellee's brief (ECF 10), and the IRS's reply brief (ECF 11). Pursuant to Local Rule 105.6, I find that the issues presented can be resolved without a hearing.

- 2 -

(Notice of Federal Tax Lien). The tax lien was based on Restivo's failure, beginning in the fourth quarter of 2002 and continuing through the second quarter of 2004, to pay its quarterly employment taxes. *See* ECF 1-18 at 2 (affidavit of IRS Insolvency Unit Specialist). Susquehanna recorded the IDOT in the Land Records of Carroll County on February 11, 2005, one month and one day after the IRS recorded its lien. *See* IDOT at 8.

As noted, Lot 39 was sold following the order of the Bankruptcy Court. However, the proceeds of the sale were held in escrow pending the outcome of proceedings in the Bankruptcy Court. Susquehanna initiated an adversary proceeding, claiming priority over the proceeds of the sale of Lot 39. Relying on a decision by Chief Judge Deborah K. Chasanow in *WC Homes, LLC v. United States*, Civ. No. DKC-09-1239, 2010 WL 1141204 (D. Md. Mar. 22, 2010), *reconsideration denied*, 2010 WL 3221845 (D. Md. Aug. 13, 2010), the Bankruptcy Court held that Susquehanna had priority over the proceeds of the ordered sale. The court reasoned that although Susquehanna recorded after the IRS, the federal statute that governs tax lien priority, 26 U.S.C. § 6323, incorporates local law (Maryland law in this case) to determine whether a security interest has been perfected and that, under Maryland law, the effective date of the IDOT was the date of delivery to Susquehanna, January 4, 2005, not the date of recordation, February 11, 2005. Thus, the Bankruptcy Court concluded that, under Maryland law, Susquehanna's interest was entitled to priority when the IRS recorded its Notice of Federal Tax Lien on January 10, 2005.

## Discussion

Pursuant to Fed. R. Bankr. P. 8013, a federal district court reviews a bankruptcy court's conclusions of law *de novo*. *See In re Official Comm. of Unsecured Creditors for Dornier*

*Aviation (N. Am.), Inc.*, 453 F.3d 225, 231 (4th Cir. 2006) ("We review the bankruptcy court's

legal determinations *de novo* and its factual findings for clear error.").

The IRS's federal tax lien was established pursuant to 26 U.S.C. § 6321, which provides:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

"The priority of federal tax liens as against competing liens asserted against a taxpayer's

property is governed by federal law." *In re Charco, Inc.*, 432 F.3d 300, 304 (4th Cir. 2005)

(citing *Aquilino v. United States*, 363 U.S. 509, 514 (1960)).   But, "Federal tax liens do not

automatically have priority over all other liens." *United States ex rel. IRS v. McDermott*, 507

U.S. 447, 449 (1993).  Of import here, 26 U.S.C. § 6323(a) states:

> The lien imposed by section 6321 shall not be valid as against any purchaser, *holder of a security interest*, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary. (Emphasis added.)

Thus, as to a purchaser, mechanic's lienor, judgment lien creditor, or—as in this case—a

holder of a "security interest," federal law "deem[s] the United States' lien to have commenced

no sooner than the filing of notice" that complies with 26 U.S.C. § 6323(f). *McDermott*, 507

U.S. at 449.  Subsection (f) provides that notice of a federal tax lien must be filed "in the case of

real property, in one office within the State (or the county, or other governmental subdivision), as

designated by the laws of such State, in which the property subject to the lien is situated . . . ."

26 U.S.C. § 6321(f)(1)(A)(i).

In this case, it is undisputed that the IRS complied with the filing requirement of

§ 6321(f)(1)(A)(i) when it filed its Notice of Federal Tax Lien with the Circuit Court for Carroll

County on January 10, 2005.  It is also undisputed that, prior to January 10, 2005, Restivo

executed and delivered the IDOT to Susquehanna, but Susquehanna had not recorded the IDOT

in the Land Records of Carroll County.

The Fourth Circuit has explained that, "if an asserted claim is a 'security interest' within

the meaning of the Tax Code, it takes priority if it is created before the government properly files

its tax liens."  *United States v. 3809 Crain Ltd. P'ship*, 884 F.2d 138, 142 (4th Cir. 1989).  Thus,

the outcome of this case hinges on whether Susquehanna held a "security interest," within the

meaning of federal law, before the IRS recorded its lien.  Moreover, federal law looks, in part, to

local law (in this case, Maryland law) to determine whether a security interest exists.

A "security interest" is defined in 26 U.S.C. § 6323(h)(1), which states:

> The term "security interest" means any interest in property acquired by contract
> for the purpose of securing payment or performance of an obligation or
> indemnifying against loss or liability.  A security interest exists *at any time* (A) if
> *at such time*, the property is in existence and the interest *has become protected*
> *under local law against a subsequent judgment lien arising out of an unsecured*
> *obligation*, and (B) to the extent that, at such time, the holder has parted with
> money or money's worth.  (Emphasis added.)

There is no dispute here that Susquehanna's IDOT qualifies as an "interest in property

acquired by contract for the purpose of securing payment or performance of an obligation,"

thereby satisfying the general definition of a security interest under § 6323(h)(1).  Moreover, the

parties agree that, by lending Restivo approximately $1 million, Susquehanna "parted with

money or money's worth," in satisfaction of the requirement contained in § 6323(h)(1)(B).

Rather, the parties dispute whether, at the time the IRS filed its Notice of Federal Tax Lien,

Susquehanna's interest in the Property, as reflected in the IDOT, had "become protected under

local law against a subsequent judgment lien arising out of an unsecured obligation," 26 U.S.C.

§ 6323(h)(1)(A), and therefore had become a "security interest" at that time, within the meaning of federal law.

Resolution of the parties' dispute thus turns on the protection afforded to Susquehanna's interest under Maryland law at the time that the IDOT had been executed and delivered, but had not yet been recorded. The Fourth Circuit has held that, under § 6323(h)(1)(B), an IRS tax lien must "be treated no better *and* no worse than other third-party [judgment liens] under state law." *In re Charco*, 432 F.3d at 306 (emphasis in original). Thus, the IRS is entitled to a sort of "'most favored nation' status so that it receives the best possible priority the state law would provide to a third-party lienor." *Id.* at 306-07. In other words, the IRS stands "'in the shoes of *any* subsequent judgment creditor, including the most favorable shoes.'" *Id.* at 307 (quoting *In re Haas*, 31 F.3d 1081, 1089 (11th Cir. 1994)) (emphasis in original). If there exists any type of judgment lien under Maryland law that could have defeated Susquehanna's unrecorded interest, the IRS prevails. But, if Susquehanna's IDOT, although unrecorded, would take priority over any and every subsequent judgment lien under Maryland law, Susquehanna prevails.

Under Md. Code (2010 Repl. Vol., 2012 Supp.), § 3-201 of the Real Property Article ("R.P."), the "effective date of a deed is the date of delivery, and the date of delivery is presumed to be the date of the last acknowledgment, if any, or the date stated on the deed, whichever is later." However, the statute goes on to say: "Every deed, *when recorded*, takes effect *from its effective date* as against the grantor, his personal representatives, every purchaser with notice of the deed, and every creditor of the grantor with or without notice." *Id.* (emphasis added). The parties quarrel over the proper interrelation between 26 U.S.C. § 6323(h)(1), which defines a security interest as an interest that, at a given time, "has become protected under local law

- 6 -

Case 11-00734 Doc 45 Filed 08/12/13 Page 7 of 15

against a subsequent judgment lien arising out of an unsecured obligation," and R.P. § 3-201, which dictates that a deed, "when recorded, takes effect from its effective date [*i.e.*, its date of delivery] as against . . . every creditor of the grantor . . . ."

The IRS argues that the "phrase 'has become' in Section 6323 limits security interests to those in existence as . . . perfected lien[s] before the Notice of Federal Tax Lien is filed (and which remain perfected thereafter)." ECF 6 at 13. The core of the IRS's argument is that the phrases "at such time" and "has become protected" mean that, in order for Susquehanna to prevail, Susquehanna must have already "perfected" its interest by recording it in the Land Records "at such time" that the Notice of Federal Tax Lien was filed. ECF 6 at 15. The IRS supports its view that § 6323 requires the security interest to have already been perfected by citing to cases arising in a variety of statutory contexts in which the same verb tense is used.

For example, in *Richmond Medical Center for Women v. Herring*, 570 F.3d 165 (4th Cir. 2009), a Virginia statute defined infanticide as "'a deliberate act that intended to kill a human infant *who has been born alive*.'" *Id.* at 179 (quoting statute) (emphasis added). The Fourth Circuit held that "the use of the present perfect tense indicates that the live birth . . . must have taken place *prior* to the 'deliberate act' that kills the fetus." *Id.* (emphasis in original). The present perfect tense (*e.g.*, "X has happened," "A has done B") generally indicates actions that have taken place in the past. *See, e.g.*, *Carr v. United States*, ____ U.S. ____, 130 S. Ct. 2229, 2236 (2010) ("Consistent with normal usage, we have frequently looked to Congress' choice of verb tense to ascertain a statute's temporal reach"); *Barrett v. United States*, 423 U.S. 212, 216 (1976) ("Congress used the present perfect tense to "denot[e] an act that has been completed"); *Dobrova v. Holder*, 607 F.3d 297 (2d Cir. 2010) ("The present perfect tense 'refers to (1) a time

in the indefinite past . . . , or (2) a past action that comes up to and touches the present'") (citing Chicago Manual of Style ¶ 5.119 (15th ed. 2003)); *Pitts v. State*, 205 Md. App. 477, 488, 45 A.3d 872, 878 (2012) ("'The present perfect tense, "has been lodged" indicates that an event occurred in the past prior to other events and implies that once the event has occurred . . . certain consequences result.'") (Citation omitted).

According to the IRS, the use of the present perfect tense refers to an "action or event which has been completed and which cannot be altered retroactively." ECF 6 at 13 (citing *United States v. Wilson*, 503 U.S. 329, 333 (1992) ("Congress' use of a verb tense is significant in construing statutes. By using these verbs in the past and present perfect tenses, Congress has indicated that computation of the credit must occur after the defendant begins his sentence.") (internal citations omitted)). It relies on the Sixth Circuit's decision in *Citizens State Bank v. United States*, 932 F.2d 490, 493 (6th Cir. 1991), where the court held that use of the phrase "has become" in § 6323 means that the only security interests that are protected are those "which exist presently, and have become valid prior to the federal tax lien." *Id.* at 493. Accordingly, in the IRS's view the phrase "at such time" means the time when the tax lien was recorded. In this case, that occurred a month before Susquehanna recorded its IDOT in the Land Records of Carroll County.

Susquehanna counters that, rather than referring to the date when the federal tax lien was recorded, "at such time" actually refers to the "date and time that the bank's security interest comes into being, under Maryland law," which in this case was six days earlier than the date on which the IRS recorded its lien. ECF 10 at 10. Looking to the text of § 6323(h)(1)(A), which states that a "security interest exists at any time . . . if at such time, . . . the interest has become

protected under local law against a subsequent judgment lien," Susquehanna posits: "The subject of the sentence [at issue in § 6323(h)(1)(A)] is [a] bank's security interest, and not the government's tax lien. The verb in this sentence is '*exists.*' It is the bank's security interest that '*exists.*'" ECF 10 at 10 (emphasis in original).  Furthermore, according to Susquehanna, "the phrase '*interest has become protected*' informs that the bank's interest was protected in the past and continues to be protected to this day, as of a date certain.  The sentence then fixes that date, with reference to Maryland law." *Id.* at 11 (emphasis in original).

According to Susquehanna, although Susquehanna did not record the IDOT until January 11, 2005, under Maryland law, the effective date of the deed is the date of delivery.  As a result, Susquehanna is deemed to have priority because the date of delivery preceded the date that the tax lien was filed.  In other words, Susquehanna maintains that because R.P. § 3-201 fixes the date of delivery as the effective date of the deed, the IDOT takes priority over the federal tax lien.  ECF 10 at 8.

Although the IRS maintains that the plain meaning of § 6323 gives the federal tax lien priority, the IRS's fallback argument is that, even if the statute does not unambiguously support its position, the Court should apply the principle of *Chevron* deference and defer to an IRS regulation, 26 C.F.R. § 301.6323(h)-1(a).  In the IRS's view, the regulation clearly prohibits a later-recorded deed of trust from relating back to an earlier date in order to trump a federal tax lien.[3]

---

[3] Under the principle of "*Chevron* deference," derived from *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), federal courts defer to "an agency's construction of the statute which it administers," *id.* at 842, if "Congress has not directly addressed the precise question at issue" with unambiguous statutory language, and the agency's construction of the statute is not "arbitrary, capricious, or manifestly contrary to the

Case 11-00734   Doc 45   Filed 08/12/13   Page 10 of 15

The regulation reiterates the statutory definition of a security interest found in 26 U.S.C.

§ 6323(h)(1), and then states:

> For purposes of this paragraph, a security interest is deemed to be protected against a subsequent judgment lien on—
>
> > (A) the Date on which all actions required under local law have been taken, or
> >
> > (B) If later, the date on which all required actions are deemed effective, under local law, to establish priority of the security interest against a judgment lien. For purposes of this subdivision, the dates described in (A) and (B) of this subdivision (i) shall be determined *without regard to any rule or principle of local law which permits the relation back of any requisite action to a date earlier than the date on which the action is actually performed*.

26 C.F.R. § 301.6323(h)-1(a)(2)(i) (emphasis added).

Susquehanna responds that § 6323 unambiguously supports its position, which precludes

the Court from following the IRS regulation prohibiting application of state law that permits

"relation back." It reasons that, even if the IRS's regulatory gloss of § 6323 is valid, R.P. § 3-

---

statute." *Id.* at 843-44. A court must uphold the agency's construction of such an ambiguous statute, even if the agency's interpretation was not "the only one it permissibly could have adopted," or was not "the reading the court would have reached if the question initially had arisen in a judicial proceeding." *Id.* at 843 n.11. "In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Id.* at 844.

However, *Chevron* deference applies only if a statute is ambiguous. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842-43; *accord City of Arlington v. FCC*, ___ U.S. ___, 133 S. Ct. 1863, 1868 (2013) (quoting *Chevron*); *W. Va. Dept. of Health & Human Res. v. Sebelius*, 649 F.3d 217, 222 (4th Cir. 2011) ("[D]eference to agency construction of statutes enters the equation only when legislation is ambiguous.").

Moreover, not all agency interpretations merit *Chevron* deference. Rather, an administrative interpretation "qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *United States v. Mead*, 533 U.S. 218, 226-27 (2001). An example of such an interpretation is one promulgated in the course of statutorily-authorized notice-and-comment rulemaking or formal agency adjudication. *See id.* at 229-31.

201 does not impose a "relation back" doctrine.  And, Susquehanna argues that, regardless of

R.P. § 3-201, its IDOT, once executed and delivered, would take priority over a subsequent

judgment lien under Maryland law (and thus would trump the IRS's later-recorded tax lien),

even if Susquehanna had never recorded the IDOT.  *See* ECF 10 at 12-15.

With regard to the grammatical structure of § 6323, I agree with the IRS that the phrase

in the statute, "at such time," indicates that whether a security interest exists must be determined

as of the time that the IRS's tax lien is recorded.  However, it does not follow that the IRS

prevails because, as I will explain, as of when the IRS's lien was recorded, Susquehanna's IDOT

was already a "security interest" that was entitled to priority under Maryland law and, hence,

federal law.

As noted, this is not the first case in which this issue has arisen.  In *WC Homes, LLC v.*

*United States*, *supra*, Civ. No. DKC-09-1239, 2010 WL 1141204 (D. Md. Mar. 22, 2010),

*reconsideration denied*, 2010 WL 3221845 (D. Md. Aug. 13, 2010), upon which the Bankruptcy

Court in this case relied, Judge Chasanow rejected the IRS's position.

In *WC Homes*, Michael Beavers owned a parcel of real property in Potomac, Maryland.

*See WC Homes*, 2010 WL 1141204, at *1.  On September 28, 2006, Beavers executed and

delivered a promissory note and a deed of trust in the property to a bank, Washington Mutual,

but Washington Mutual did not record the deed of trust until February 7, 2007.  Between the

time that Beavers delivered the deed of trust to Washington Mutual and the time that Washington

Mutual recorded it, the IRS filed in the appropriate county clerk's office two liens against the

property, on October 17 and 24, 2006.  *Id.*  In June 2007, Beavers defaulted on his loan, and

Washington Mutual foreclosed on the property.  Washington Mutual purchased the property at a

foreclosure sale on September 11, 2007, and subsequently conveyed the property by deed to another entity, WC Homes, which recorded its deed in May 2008. *Id.*

WC Homes sued the United States to quiet title, arguing that the tax liens were extinguished by the foreclosure sale. *Id.* As in this case, a priority contest ensued. Judge Chasanow concluded that the Washington Mutual deed had priority because it took effect from the date that it was delivered, not the date that it was recorded. *Id.* at *6. She reasoned that "the only question is when the Washington Mutual interest became protected under Maryland law. The federal statute directs reference to local law to determine the status of the security interest as against a 'subsequent judgment lien arising out of an unsecured obligation.'" *Id.* at *5 (quoting 26 U.S.C. § 6323(h)(1)).

To determine the status of the deed of trust under Maryland law, the court in *WC Homes* looked to Maryland case law interpreting R.P. § 3-201. In *Chicago Title Ins. Co. v. Mary B.*, 190 Md. App. 305, 988 A.2d 1044, *cert. granted*, 415 Md. 38, 997 A.2d 789, *cert. dismissed*, 417 Md. 384, 10 A.3d 199 (2010), the Court of Special Appeals concluded that the language of R.P. § 3-201 "plainly means that a recorded deed of trust is effective against any creditor of the person who granted the deed of trust as of the date the deed of trust was delivered (not the date it was recorded) regardless of whether the creditor did or did not have notice of the deed of trust at any time." *Id.* at 316. According to Judge Chasanow, "because the Washington Mutual deed of trust would have priority over any subsequent judgment lien, it was a 'security interest' under federal law as of the date of delivery, which was prior to the recording of the tax liens." *WC Homes*, 2010 WL 1141204, at *6. It followed that the "The federal tax liens [were] not valid against Washington Mutual because they were not filed until after the delivery of the

- 12 -

Washington Mutual deed. The Washington Mutual deed therefore [took] priority over the federal tax liens." *Id.*

On motion for reconsideration in *WC Homes*, the IRS asserted its argument based on the regulation, 26 C.F.R. § 301.6323(h)-1(a)(2)(i), arguing that R.P. § 3-201 impermissibly applies a "relation back" doctrine.  Rejecting that claim, Judge Chasanow reasoned, *WC Homes*, 2010 WL 3221845, at *3-4:

> To the extent that the regulation is being cited as amending or restricting the statute, the effort must be rejected.
>
> *   *   *
>
> The statute [*i.e.*, 26 U.S.C. § 6323(h)(1)] is not ambiguous. It states that a tax lien is not valid as against a holder of a security interest "protected under local law against a subsequent judgment lien arising out of an unsecured obligation."  Local law in this instance is Maryland law.  Whatever purpose the definition in the regulation is supposed to serve, it cannot be used to interpret the statute.

Upon my independent review of the authorities cited by the parties, I agree completely with Judge Chasanow's cogent analysis in *WC Homes*. I adopt her reasoning by reference.

Susquehanna prevails for an additional reason, as well.  Regardless of R.P. § 3-201, Susquehanna's IDOT would take priority over the IRS's tax lien even if the IDOT had never been recorded.  This is an independently sufficient ground to affirm the Bankruptcy Court's ruling.

Under § 6323(h)(1), an IRS tax lien is entitled only to the protection due under state law to "a subsequent judgment lien arising out of an unsecured obligation."  And, under Maryland law, a "'judgment creditor is not in the position of a *bona fide* purchaser, and his [or her] claim is subject to prior, undisclosed equities.'"  *Washington Mutual Bank v. Homan*, 186 Md. App. 372, 394, 974 A.2d 376, 389 (2009) (quoting *Himmighoefer v. Medallion Indus., Inc.*, 302 Md. 270, 280, 487 A.2d 282, 287 (1985)).  Maryland adheres to the "general rule that the holder of an

equitable title or interest in property, by virtue of an unrecorded contract of sale, has a claim

superior to that of a creditor obtaining a judgment subsequent to the execution of the contract."

*Stebbins-Anderson Co. v. Bolton*, 208 Md. 183, 187, 117 A.2d 908, 910 (1955).  This rule is "an

application of the familiar doctrine of equitable conversion."  *Id.*  "'The effect of [an unrecorded

sale] contract is to vest the equitable ownership of the property in the vendee, subject to the

vendor's lien for unpaid purchase money, and to leave only the legal title in the vendor . . . .'"

*Id.* (quoting *Kinsey v. Drury*, 146 Md. 227, 232, 126 A. 125, 127 (1924)).  And, a "'judgment

creditor's lien will not attach to the judgment debtor's bare legal title in property.'"  *Chambers v.*

*Cardinal*, 177 Md. App. 418, 434, 935 A.2d 502, 511 (2007) (quoting *Wolf Org., Inc. v. Oles*,

119 Md. App. 357, 369, 705 A.2d 40 (1998)).

Moreover, "Maryland cases have treated lenders who secure their interests with a

mortgage or deed of trust"—such as Susquehanna—"as entitled to the protections available to

*bona fide* purchasers for value, where such lenders were without notice" of facts that would

divest them of good faith status.[4]  *Washington Mutual Bank*, 186 Md. App. at 396, 974 A.2d at

390.  *Accord Murphy v. Fishman*, 207 Md. App. 269, 286, 52 A.3d 130, 140-41  (reiterating

general rule from *Washington Mutual Bank*, but holding that refinance mortgagee was not

entitled to *bona fide* purchaser status where it had constructive notice of prior interest in

property), *cert. granted*, 429 Md. 528, 56 A.3d 1241 (2012); *Taylor Elec. Co., Inc. v. First*

*Mariner Bank*, 191 Md. App. 482, 503, 992 A.2d 490, 502 ("The overwhelming weight of

authority is that once a bona fide purchaser *or lender for value* acquires title by way of execution

of contract for sale or valid mortgage, the purchaser *or mortgagee* takes title free and clear of any

---

[4] There is no allegation here that Susquehanna had actual or constructive notice of the
IRS's unrecorded tax lien at the time it received the IDOT from Restivo.

subsequent lien.") (emphasis added), *cert. denied*, 415 Md. 43, 997 A.2d 792 (2010); *see also*

*Silver v. Benson*, 227 Md. 553, 560, 177 A.2d 898, 902 (1962) ("[A] mortgagee not a party to . . .

fraud is entitled to the protection afforded a *bona fide* purchaser by a court of equity, to the

extent of his interest.").

In sum, Susquehanna, as a lender for value, was entitled under Maryland law to the

protection afforded to a *bona fide* purchaser. The IRS was entitled only to the most favorable

treatment due to a judgment lien holder under Maryland law. And, Susquehanna received its

IDOT before the IRS's tax lien was recorded. Therefore, Susquehanna's IDOT would take

priority over the IRS's lien, even if Susquehanna had never recorded the IDOT.[5]

For all of the foregoing reasons, the judgment of the Bankruptcy Court is affirmed by the

Order that follows.

Date:   August 12, 2013                          /s/
                                        Ellen Lipton Hollander
                                        United States District Judge

---

[5] In light of the conclusion that recordation is irrelevant to the priority of interests in this case, one might wonder what purpose is served by the recordation requirement of R.P. § 3-201, which states that a deed, "*when recorded*, takes effect from its effective date as against the grantor, his personal representatives, every purchaser with notice of the deed, and every creditor of the grantor with or without notice." (Emphasis added.) Although recordation is not dispositive as between the deed of a *bona fide* purchaser or lender for value and a judgment lien creditor, as in this case, recordation is necessary to secure priority in other circumstances. For instance, as between two *bona fide* purchasers for value, whoever records his or her deed first is entitled to priority. *See* R.P. § 3-203; *accord Lewis v. Rippons*, 282 Md. 155, 161, 383 A.2d 676, 680 (1978). And, recordation may also affect priority as between two judgment creditors or as between a judgment lien and a deed not held by a *bona fide* purchaser or lender for value. But, those situations are not pertinent in this case.